**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WALLICE F. JACKSON** | : | **CIVIL ACTION** |
| Plaintiff, | : | |
| | : | |
| v. | : | |
| | : | |
| **LEHIGH VALLEY PHYSICIANS** | : | |
| **GROUP** | : | |
| Defendant. | : | **NO. 08-3043** |

<u>**MEMORANDUM AND ORDER**</u>

GENE E.K. PRATTER, J.                                          JANUARY 29, 2009

  The workplace conduct of an employer and a co-worker forms the basis of this litigation.

Ms. Wallice Jackson, a Certified Medical Assistant, filed an Amended Complaint against her

employer, Lehigh Valley Physicians Group ("LVPG"), alleging claims of race

discrimination/disparate treatment, unlawful retaliation, and termination under Title VII;

violations of the Pennsylvania Whistleblower Law, 43 P.S. §§ 1421 <u>et seq.</u> ("Whistleblower

Law") and the Pennsylvania Human Relations Act, 43 P.S. §§ 951 <u>et seq.</u>; intentional infliction of

emotional distress; and negligent infliction of emotional distress.  LVPG filed a Partial Motion to

Dismiss the Complaint, seeking to dismiss certain of Ms. Jackson's claims and demands, the

dismissal of some of which Ms. Jackson concedes.[1]  Thus, LVPG's remaining arguments for the

---

  [1] LVPG seeks dismissal of the following claims and demands: Count III's Pennsylvania
Whistleblower Law claim, including the demand for punitive damages;  Count IV's demand for
punitive damages under the Pennsylvania Human Relations Act; Count V's Intentional Infliction
of Emotional Distress claim; and Count VI's Negligent Infliction of Emotional Distress claim.
In her opposition brief and at the oral argument, Ms. Jackson specifically abandoned Count III's
demand for punitive damages under the Pennsylvania Whistleblower Law; Count IV's demand
for punitive damages under the Pennsylvania Human Relations Act; and Count VI's Negligent
Infliction of Emotional Distress claim.  She maintained, however, that the Court should deny the

Court's consideration are that 1) Ms. Jackson's Whistleblower Law claim should be dismissed due to the expiration of the statute of limitations; and 2) Ms. Jackson's claim for intentional infliction of emotional distress should be dismissed because it is barred by the Pennsylvania Workers' Compensation Act's  exclusive remedy provision or, in the alternative, because the work-related conduct alleged is not, as a matter of law, extreme or outrageous.

For the reasons discussed below, the Court grants LVPG's Partial Motion to Dismiss as to Ms. Jackson's Whistleblower Law claim, but denies the Motion as to Ms. Jackson's claim for intentional infliction of emotional distress.

I.      FACTUAL HISTORY

Ms. Jackson's factual allegations describe four different incidents: (1) the assault; (2) the blood pressure readings report; (3) the photograph; and (4) the termination.

A.      The Assault

Prior to her employment at LVPG, Ms. Jackson had 30 years of experience as a Medical Assistant.  On September 19, 2005, Ms. Jackson was hired by LVPG as a Certified Medical Assistant.  She became the only black employee at LVPG.

Six months after Ms. Jackson began work at LVPG, a white co-worker, Ms. Patricia McElroy, approached her and said "because of you people coming here, I can't buy a house." Am. Compl. at ¶¶ 21–22.  After Ms. Jackson "rebuffed" Ms. McElroy's "patently derogatory reference" to Ms. Jackson's race, Ms. McElroy allegedly intentionally ran a chair into Ms. Jackson, causing Ms. Jackson's left knee to hit her desk.  Id. at ¶ 42.  Ms. Jackson suffered a contusion on her left knee and was placed on limited duty; her contusion later escalated into

remainder of the Motion.

phlebitis, resulting in extreme and chronic pain.   The incident between Ms. McElroy and Ms. Jackson was marked as an "Assault / Verbal Abuse / Code Orange" on the Employee Incident Report filed by LVPG.  Id. at ¶ 43.

After the incident, LVPG told Ms. Jackson that she and Ms. McElroy needed to "work together side by side in a professional manner," and closed the incident without terminating Ms. McElroy or placing her on any type of disciplinary leave.  Id. at ¶¶ 46–47.

B.      The Blood Pressure Readings Report

Eight months after Ms. Jackson began work at LVPG, she was assigned to mentor a new, white female orientee, Ms. Maria Olivera.  Ms. Olivera was hired as a "Float," someone who is "screened and hired by [LVPG] for placement in various physician practices throughout the network in order to fill in for absent employees." Id. at ¶ 49.

Ms. Jackson noticed that Ms. Olivera was misreading blood pressure readings and recording false readings into a patient's medical record.  Ms. Olivera admitted that she "never took a blood pressure before" and did not know the difference between diastolic and systolic readings, but yet refused to take Ms. Jackson's instructions regarding proper blood pressure reading and data collection techniques.  Id. at ¶¶ 53, 56.  Ms. Jackson reported her findings to Dr. Boulay, chief of gynecologic oncology and a white male, who promised to pass them on to Ms. Jackson's supervisor, Ms. Sandra Tkach.

Some time thereafter, Ms. Tkach verbally reprimanded Ms. Jackson for treating Ms. Olivera unkindly.  Ms. Tkach refused to provide Ms. Jackson with details of Ms. Olivera's accusations against her or allow Ms. Jackson to respond to the accusations.  When Ms. Jackson asked Ms. Tkach about the status of her report to Dr. Boulay, Ms. Tkach reportedly told her that it was none of her business.

Ms. Olivera completed her orientation with Ms. McElroy, not Ms. Jackson.  However, Ms. Olivera continued to complain about Ms. Jackson to Ms. Tkach, resulting in "regular and routine" verbal reprimands of Ms. Jackson by Ms. Tkach.  Id. at ¶¶ 66–68.  These reprimands were purportedly based on Ms. Jackson's alleged "inappropriate behavior and the need for improvement," but at no time did Ms. Tkach provide Ms. Jackson with any details of Ms. Olivera's accusations against her.  Id. at ¶¶ 69–70.  Ms. Jackson left meetings with Ms. Tkach "confused and frustrated," and believed that Ms. Tkach was "set[ting her] up to fail."  Id. at ¶¶ 71, 74.

C.      The Photograph

Around the same time of Ms. Jackson's report to Dr. Boulay, a series of staff photos were taken, which included Ms. Jackson, for use in a public advertisement brochure.  Some time later, another series of photos was taken, without Ms. Jackson's knowledge, which did not include Ms. Jackson.  When Ms. Jackson asked why she had not been included in the second series of photos with the other employees, Ms. Tkach told her that "the photographer had lost it."  Id. at ¶ 85.  Ms. Jackson alleges that LVPG purposefully failed to include her in the brochure staff photo despite her status as a member of LVPG's staff.

D.      The Termination

On September 13, 2006, Ms. Olivera complained to Ms. Alyssa Pauls, a registered nurse and white female, that she was "being treated unkindly by the other Medical Assistants."  Id. at ¶ 90.  The only Medical Assistants on LVPG's staff at the time were Ms. Olivera and Ms. Jackson, as Ms. McElroy was on maternity leave.  The next day, on September 14, 2006, Ms. Tkach interviewed Ms. Olivera regarding her complaints and forwarded the matter to the human resources department.

On September 25, 2006, Ms. Tkach gave Ms. Jackson a formal, written reprimand, accusing her of "unprofessional, disrespectful, demeaning behavior towards fellow employees" (The "Personnel Report"). Id. at ¶ 94. As before, the details of the accusation were not explained to Ms. Jackson, except that Ms. Jackson was provided with the dates of the alleged incidents. One of these dates was when Ms. Jackson was on vacation outside of the state.

Ms. Jackson refused to sign the Personnel Report, ostensibly because it would or could have been viewed as an admission of the alleged behavior. Instead, Ms. Jackson formally complained to Ms. Tkach's superior, "Pam," present as a witness, that Ms. Tkach's continuous and relentless reprimands of Ms. Jackson were harassment. Pam and LVPG failed to take Ms. Jackson's complaint seriously.

On September 27, 2006, Ms. Jackson was terminated for "unprofessional, disrespectful, demeaning behavior towards fellow employees." Id. at ¶ 110. Ms. Jackson was offered the opportunity to continue working for a thirty (30) day period so as to find alternate employment elsewhere in the Lehigh Valley Hospital Network, or receive a severance package. Ms. McElroy was also terminated and offered the same severance option. According to the Amended Complaint, Ms. Jackson and Ms. McElroy were terminated for failing to improve their behavior, which created "'moral [sic] issues in the work environment and a need for a change.'" Id. at ¶ 109.

      E.     The Grievance Hearing Request

Ms. Jackson requested a hearing through LVPG's grievance process, so that she could "defend herself to a neutral third party and present witness testimony countering [LVPG's] allegations of demeaning and unprofessional behavior toward fellow employees." Id. at ¶ 114. Although LVPG promised to conduct a hearing before the Grievance Committee on or about

December 12, 2006, that hearing has yet to occur.

F.      Ms. Jackson's Subsequent Employment and Unemployment Benefits

Ms. Jackson chose to seek another position in the Lehigh Valley Health Network

("LVHN"), rather than seek a severance package.  During the thirty (30) day period following her

termination, Ms. Jackson actively sought employment throughout the LVHN, but did not receive

any callbacks.  Ms. Jackson was unable to acquire employment with any hospital in the Lehigh

Valley, requiring her to seek work outside the Commonwealth of Pennsylvania.

Ms. Jackson filed for unemployment benefits on or about October 27, 2006, and LVPG

requested that these benefits be denied.  Ms. Jackson was found to be eligible for unemployment

benefits by the Commonwealth of Pennsylvania Department of Labor and Industry for

Unemployment Benefits ("Unemployment Benefits Department").  The basis for this finding

rested, in part, on LVPG's inability to present sufficient evidence that Ms. Jackson's termination

was based on "a willful disregard of the employer's interests, a deliberate violation of the

employer's rules, a disregard for the standards of behavior which the employer has the right to

expect, or negligence which demonstrates wrongful intent or intentional and substantial disregard

of the employer's interest or the employer's duties and obligations."  Id. at ¶ 123.  The Notice of

Determination issued by the Unemployment Benefits Department "specifically points to the

factual discrepancies of the allegations against [Ms. Jackson] by [LVPG] in the Personnel Report

wherein the incident(s) alleged by Ms. Olivera occurred when [Ms. Jackson] was on vacation."

Id. at ¶ 125.

G.      Physical and Emotional Effects of LVPG's Actions

As a result of LVPG's actions against her, Ms. Jackson has lost significant weight and is

suffering other ongoing physical and emotional effects.

II.     STANDARD OF REVIEW

A Rule 12(b)(6) motion to dismiss tests the sufficiency of a complaint. Conley v. Gibson, 355 U.S. 41, 45–46 (1957). Rule 8 of the Federal Rules of Civil Procedure requires only "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964–65 (2007) (quoting Conley, 355 U.S. at 47). While a complaint need not contain detailed factual allegations, the plaintiff must provide "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Id. (citations omitted). Specifically, "[f]actual allegations must be enough to raise a right to relief above the speculative level . . . ." Id. at 1965 (internal citations omitted).

In making such a determination, courts "must only consider those facts alleged in the complaint and accept all of those allegations as true." ALA, Inc. v. CCAIR, Inc., 29 F.3d 855, 859 (3d Cir. 1994) (citing Hishon v. King & Spalding, 467 U.S. 69, 73 (1984)). See also Twombly, 127 S. Ct. at 1965 (stating that courts must assume that "all the allegations in the complaint are true (even if doubtful in fact)"). The Court must also accept as true all reasonable inferences that may be drawn from the allegations, and view those facts and inferences in the light most favorable to the non-moving party. Rocks v. Philadelphia, 868 F.2d 644, 645 (3d Cir. 1989). The Court, however, need not accept as true "unsupported conclusions and unwarranted inferences." Doug Grant, Inc. v. Greate Bay Casino Corp., 232 F.3d 173, 183–84 (3d Cir. 2000) (citing City of Pittsburgh v. West Penn Power Co., 147 F.3d 256, 263, n.13 (3d Cir. 1998)), or the plaintiff's "bald assertions" or "legal conclusions," Morse v. Lower Merion Sch. Dist., 132 F.3d. 902, 906 (3d Cir. 1997).

To evaluate a motion to dismiss, the Court may consider the allegations contained in the complaint, exhibits attached to the complaint, matters of public record and records of which the Court may take judicial notice.  See Tellabs, Inc. v. Makor Issues & Rts., 127 S. Ct. 2499, 2509 (2007); Pension Benefit Guar. Corp. v. White Consol. Indus., 998 F.2d 1192, 1196 (3d Cir. 1993).

III.    DISCUSSION

A.    Ms. Jackson's Whistleblower Law Claim Is Time-Barred

LVPG argues that Ms. Jackson's Whistleblower Law claim in Count III is facially time-barred because Ms. Jackson did not bring it within the Whistleblower Law's 180-day statute of limitations.  LVPG points out that although Ms. Jackson's notice of termination was given on September 27, 2006, she did not file her original Complaint until July 1, 2008, long after the statute of limitations expired.

The Whistleblower Law provides that a person who alleges a violation of it must bring suit "within 180 days after the occurrence of the alleged violation."  43 P.S. § 1424.  The 180-day period is mandatory and must be strictly applied.  Romig v. Northampton County Dep't of Corre., No. 06-5309, 2008 U.S. Dist. LEXIS 24829, at *26 (E.D. Pa. Mar. 24, 2008).  Courts have no discretion to extend this time period, Street v. Steel Valley Opportunities Industrialized Ctr., No. 06-421, 2006 U.S. Dist. LEXIS 52459, at *12 (W.D. Pa. July 31, 2006), and will dismiss claims brought after the period expires.  See Livingston v. Borough of McKees Rocks, No. 05-4287, 2007 U.S. App. LEXIS 5471, at **9–11 (3d Cir. 2007) (Whistleblower Law claim dismissed as time-barred); Romig, 2008 U.S. Dist. LEXIS 24829, at **26–27 (same).

Ms. Jackson claims that the so-called continuing violations doctrine[2] tolls the running of

_____

[2]  The Third Circuit Court of Appeals has explained that the continuing violations doctrine is an "equitable exception to the timely filing requirement."  Cowell v. Palmer Twp.,

her statute of limitation.   She points out that the Pennsylvania Supreme Court has not addressed

the issue of whether a continuing violation can toll the 180-day statute of limitations for the

Whistleblower Law, and urges this Court to find that the Pennsylvania Supreme Court would toll

the statute of limitations for continuing violations claims under the Whistleblower Law.

Neither party has provided any caselaw that is determinative as to whether the continuing

violations doctrine applies to claims under the Whistleblower Law, and the Court's research has

---

263 F.3d 286, 292 (3d Cir. 2001) (internal quotations omitted).  "When a defendant's conduct is
part of a continuing practice, an action is timely so long as the last act evidencing the continuing
practice falls within the limitations period; in such an instance, the court will grant relief for the
earlier related acts that would otherwise be time-barred."  Harry v. City of Philadelphia, No. 03-
661, 2004 U.S. Dist. LEXIS 11695, at *36–37 (E.D. Pa. June 18, 2004) (quoting Brenner v.
Local 514 United Bhd. Of Carpenters and Joiners of Am., 927 F.2d 1283, 1295 (3d Cir. 1991)).
For the continuing violations doctrine to apply, a plaintiff must establish that the offending
conduct was "more than the occurrence of isolated or sporadic events."  West v. Philadelphia
Elec. Co., 45 F.3d 744, 755 (3d Cir. 1995) (internal quotations omitted).  A court should consider
at least the following three factors when considering whether the continuing violations doctrine
applies:

> (1) subject-matter - whether the violations constitute the same type of
> discrimination, tending to connect them in a continuing violation;(2) frequency
> - whether the acts are recurring or more in the nature of isolated incidents; and
> (3) degree of permanence - whether the act had a degree of permanence which
> should trigger the plaintiff's awareness of and duty to assert his/her rights and
> whether the consequences of the act would continue even in the absence of a
> continuing intent to discriminate.

Cowell, 263 F.3d at 292 (internal citations omitted).  The crucial inquiry is whether the actions
alleged were "discrete discriminatory acts" that can be brought individually.  National R.R.
Passenger Corp. v. Morgan, 536 U.S. 101, 110–15 (2002) (discussing the continuing violations
doctrine in the Title VII context); O'Connor v. City of Newark, 440 F.3d 125, 128 (3d Cir. 2006)
(noting that "Morgan held simply that causes of action that can be brought individually expire
with the applicable limitations period" and "the distinction between 'continuing violations' and
'discrete acts' is not an artifact of [Title VII], but is rather a generic feature of federal
employment law.  Thus, in whatever statutory context the distinction may arise, Morgan will
control.").  Among the "discrete discriminatory acts" recognized by the Supreme Court are
"termination, failure to promote, denial of transfer, or refusal to hire."  Morgan, 536 U.S. at 114.

not uncovered any.[3]  Regardless of whether the doctrine applies to these claims, Ms. Jackson has

not alleged facts sufficient to support a continuing violations claim, in any event.  Indeed, her

Amended Complaint does not allege that LVPG engaged in *any* conduct after her termination date

that violated the Whistleblower Law, and so her arguments premised upon continuing violation

equitable tolling are, at best, academic.

Regarding LVPG's post-termination conduct, Ms. Jackson complains that no hospital in

the Lehigh Valley has offered her an opportunity for employment since her termination, thereby

requiring her to seek employment outside the Commonwealth of Pennsylvania.  For whatever else

this information may be worth, the observation does not include any allegation against LVPG,

much less one that would support a continuing violation of the Whistleblower Law.

The Amended Complaint also states that Ms. Jackson has yet to have a hearing before

LVPG's Grievance Committee.  But Ms. Jackson does not allege that this failure to hold a hearing

constitutes a "continuing violation" that would toll the statute of limitations.  See Romig, 2008

U.S. Dist. LEXIS 24829, at *26 (strictly applying the 180-day statute of limitations because

plaintiff failed to cite law in arguing that arbitration process tolled the Whistleblower Law's

statute of limitations).  Moreover, the effective denial of a grievance hearing is the sort of

---

[3]  The Livingston decision assumed, without discussion, that the continuing violations
doctrine applies to Whistleblower Law claims, but found it inapplicable to the facts of the case
because each of the challenged incidents was individually actionable when it occurred.
Livingston 2007 U.S. App. LEXIS 5471, at *9, n.3.  By contrast, in Albright v. City of
Philadelphia, 399 F. Supp. 2d 575, 595, n.27 (E.D. Pa. 2005), the Court suggested, in dicta, that
the continuing violations doctrine likely would not apply to Whistleblower Law claims, citing
cases where the Pennsylvania Commonwealth Court had denied equitable discretion in extending
the 180-day time period.  And, in O'Connor v. City of Newark, the Third Circuit Court of
Appeals determined that the continuing violations doctrine applied generally in federal
employment law statutes, not just Title VII, but said nothing about state law.  O'Connor v. City
of Newark, 440 F.3d 125, 128 (3d. Cir. 2006).

"discrete act" that likely does not constitute a continuing violation.  See Morgan 536 U.S. at 114.

Here, the effective denial of a hearing occurred on or about December 12, 2006, well more than

180 days before Ms. Jackson's Complaint was filed.

The first time that Ms. Jackson mentioned anything resembling an "ongoing" pattern of

retaliation was in her opposition brief,[4] where she stated that by the time she filed her original

Complaint, she had "finally found a job in the Lehigh Valley, albeit outside the medical

profession – Macy's.  LVPG and LVHN are engaging in an ongoing practice and pattern of

retaliation against Jackson."  Pl.'s Brief in Defense of Partial Mot. to Dismiss the Am. Compl. at

7.  Ms. Jackson's counsel clarified these statements at oral argument, explaining that Ms.

Jackson's continuing violations theory is that LVPG interfered and "blackballed" her from finding

employment in the Lehigh Valley within the medical profession.  Oral Argument Tr. at 14.

Without any factual allegations to support this theory, the Court must dismiss Ms. Jackson's

Whistleblower Law claim.  See Romig, 2008 U.S. Dist. LEXIS 24829 at *27 (court dismissed

Whistleblower Law claim based on the expiration of the statute of limitations because plaintiff did

"not allege facts to establish any violation of the Whistleblower Law subsequent to the date his

employment was terminated."); Street, 2006 U.S. Dist. LEXIS 52459, at *13 (Whistleblower Law

claim dismissed because the "last act of retaliation alleged in the Complaint is the termination of

employment").

B.      Ms. Jackson's Intentional Infliction of Emotional Distress Claim Falls Within the

---

[4]  Facts raised for the first time in a brief may not be considered when evaluating a
motion to dismiss.  Huggins v. Coatesville Area School District, No. 07-4917, 2008 U.S. Dist.
LEXIS 65604, at **12–13, n.6 (E.D. Pa. Aug. 27, 2008) ("For purposes of the motion to dismiss,
of course, the Court must look at the allegations in the pleading, not the subsequent arguments in
the briefs raising arguably new or different 'facts.'").

Personal Animus Exception to the Workers' Compensation Act

LVPG asserts that the exclusivity provisions of the Workers' Compensation statutory scheme bar Ms. Jackson's claim for intentional infliction of emotional distress.  Pennsylvania courts have made clear that the statute "provides the exclusive remedy for all employees' work-related injuries."  McInerney v. Moyer Lumber & Hardware, Inc., 244 F. Supp. 2d 393, 400 (E.D. Pa. 2002) (citing 77 Pa. Cons. Stat. Ann. § 481(a)).  However, the statute recognizes a limited exception, known as the "personal animus" or "third party attack" exception, which permits claims for "'employee injuries caused by the intentional conduct of third parties for reasons personal to the tortfeasor and not directed against him as an employee or because of his employment.'"  McInerney, 244 F. Supp. 2d at 400 (quoting Durham Life Ins. Co. v. Evans, 166 F.3d 139, 160 (3d Cir. 1999)). See also Huggins v. Coatesville Area School District, No. 07-4917, 2008 U.S. Dist. LEXIS 65604, at **40–41 (E.D. Pa. Aug. 27, 2008).  "The 'critical inquiry in determining the applicability of the third-party attack exception is whether the attack was motivated by personal reasons, as opposed to generalized contempt or hatred, and was sufficiently unrelated to the work situation so as not to arise out of the employment relationship.'" McInerney, 244 F. Supp. 2d at 400 (quoting Fugarino v. Univ. Servs., 123 F. Supp. 2d 838, 844 (E.D. Pa. 2000)).  In other words, "the plaintiff must demonstrate that an individual *other than the employer* acted in a tortious manner unrelated to the plaintiff's status as employee."  Jamison v. Campbell Chain Cooper Tool, No. 07-0324, 2008 U.S. Dist. LEXIS 24896, at *9 (M.D. Pa. March 27, 2008) (emphasis in original).  See also Hettler v. Zany Brainy, Inc., No. 99-3879, 2000 U.S. Dist. LEXIS 14537, at *13 (E.D. Pa. Sept. 26, 2000).

The Third Circuit Court of Appeals has stated that it "understand[s] Pennsylvania law to

extend workers' compensation preemption to personal animosity that develops from work-related events." Durham Life Ins. Co., 166 F.3d at 160, n.16. Additionally, "Pennsylvania law presumes that an injury is work-related when it occurs on the employer's premises." Mahoney, 2006 U.S. Dist. LEXIS 27859, at *9 (internal citations omitted). See also id. at *13 (finding that the Workers' Compensation Act barred an intentional infliction of emotional distress claim where the alleged harassment occurred on the employer's premises and was "tied closely" to the employer-employee relationship, including demotions, unjustified criticisms, and derogatory comments about women as managers); accord Ahmed v. Lowe's Company Inc., No. 06-4798, 2008 U.S. Dist. LEXIS 58568, at **23–24 (E.D. Pa. July 31, 2008) (finding that plaintiff's intentional infliction of emotional distress claim was barred by the Workers' Compensation Act because the alleged racial harassment of plaintiff, including unfair discipline, scrutiny and accusation, was performed by defendant's employees while they were working at defendant's place of business and in the commission of their job-related responsibilities). For an act to fall within the personal animus exception, it "cannot be one which would be expected in the workplace." Hettler, 2000 U.S. Dist. LEXIS 14537, at *13.

"For the purposes of a motion to dismiss, in order to plead a valid cause of action which would fall within the personal animus exception, an employee must assert that his injuries are not work-related because he was injured by a co-worker for purely personal reasons." Huggins, 2008 U.S. Dist. LEXIS 65604, at *41 (internal quotations omitted). Courts have varied considerably in their application of this personal animus exception. See Durham Life Ins. Co. 166 F.3d at 160 (comparing cases holding that sexual and racial harassment claims triggered the personal animus exception with cases holding that such claims did not trigger the exception); Huggins, 2008 U.S.

Dist. LEXIS 65604, at *42, n.15 (same); Fugarino v. University Services, 123 F. Supp. 2d 838, 843–44 (E.D. Pa. 2000) (same).  See also Davis v. Alcoa Mill Prods., No. 04-1305, 2004 U.S. Dist. LEXIS 18696, at **5–7 (E.D. Pa. Sept. 13, 2004) (holding that personal animus exception did not apply to intentional infliction of emotional distress claim based on racial harassment because all of the alleged conduct was taken in relation to plaintiff's employment, such as having been unfairly disciplined, evaluated, blamed for malfunctions at work, suspended and demoted). Outside of the sexual harassment context, Pennsylvania courts appear most likely to find that workplace conduct falls within the personal animus exception when the conduct involves physical violence, harm, or threats thereof.  For instance, in Price v. Philadelphia, 790 F. Supp. 97, 100 (E.D. Pa. 1992), plaintiff's co-workers allegedly used racial epithets around plaintiff, physically threatened plaintiff, and deliberately discussed deer hunting and killing deer in plaintiff's presence, knowing of his aversion to the topic.  Id.  Following such a discussion, plaintiff found a deer's head tied to the hood of his car.  Id.  The court found that plaintiff's allegations of racial harassment by his co-workers were not barred by the Workers' Compensation Act, stating that "it cannot be said that the conduct alleged clearly was not a result of personal animosity of fellow employees toward [plaintiff]."  Id.  See also Gillespie v. Vecenie, 436 A.2d 695, 697 (Pa. Super. 1981) (holding that plaintiff's allegations of being physically attacked by a co-worker were sufficient to trigger the personal animus exception, where the attack was part of a longstanding feud caused by "[p]ure personal hatred toward the plaintiff . . . personal animosity . . . in no way resulted [sic] out of a relationship between an employer and an employee or . . . between two co-employees [and the attacker stated] "this has nothing to do with the job, this is between us,.") (internal quotations omitted); Mike v. Borough of Aliquippa, 421 A.2d 251, 255 (Pa. Super. 1980)

14

(affirming trial court's application of the personal animus exception because there was evidence that the violent attack on plaintiff was motivated by personal reasons and the dispute was already several months old at the time of the assault).  But see Abbott v. Anchor Glass Container Corp., 758 A.2d 1219, 1224–25 (Pa. Super. 2000) (finding that the Workers' Compensation Act was the exclusive basis of recovery where the decedents had been shot and killed by their co-worker, because the shootings developed from work-related animosity, occurred at the workplace, and the decedents were shot because of their status as supervisors and not for reasons personal to them).

These cases demonstrate that the alleged motivation behind the offending act must be individualized, not just aimed at every member of a particular class.  "To fit within the [personal animus] exception, the third party's or fellow employee's act must have been motivated by his animosity against the injured employee.  If the third party would have attacked a different person in the same position as the injured employee, the attack falls outside the [personal animus] exception."  Price, 790 F. Supp. at 100 (internal citations omitted).

As Ms. Jackson's counsel conceded during the oral argument, most of Ms. Jackson's allegations involve the kind of conduct that courts have found to be *outside* of the personal animus exception, and therefore barred by the Workers' Compensation Act – excessive and unfair reprimands and discipline, failure to respond seriously to a complaint, omission from a workplace photo brochure, and termination.  These acts all took place at Ms. Jackson's work, during business hours, and were related to workplace activities.  The phrasing of the allegations in Ms. Jackson's Amended Complaint is also telling: Ms. Jackson alleges that she and Ms. McElroy were terminated for failing to improve their behavior in the workplace, thereby creating "moral[e]

issues in the <u>work environment</u> and the need for change."  Am. Compl. at ¶ 109 (emphasis added).
Also, Ms. Jackson alleges that LVPG treated her differently from her co-workers with respect to
its workplace "disciplinary policy and procedure."  <u>Id.</u> at ¶ 112.  Further underscoring this point,
Ms. Jackson specifically alleges that LVPG "acted through [its] agents, servants, and employees,
each of whom acted within the scope of his/her employment."  Id. at ¶ 10.  <u>See</u> <u>Ahmed</u>, 2008 U.S.
Dist. LEXIS 58568, at **23–24 (E.D. Pa. July 31, 2008) (noting that the plaintiff alleged that his
intentional infliction of emotional distress claim arose from events that occurred in the regular
course and scope of employment); <u>McInerney</u>, 244 F. Supp. 2d at 401 (noting that plaintiff "does
not allege that Defendants' conduct was motivated by personal animus").

Nevertheless, Ms. Jackson has alleged at least some specific conduct that brings this claim
within the personal animus exception, namely, her physical assault at the hands of Ms. McElroy.[5]
Ms Jackson alleges that Ms. McElroy told her, "because of you people coming here I can't buy a
house," and then, "in a visible rage," ran a chair into Ms. Jackson's knees.  <u>Id.</u> at ¶¶ 40–42.  Like
the other conduct alleged in Ms. Jackson's Amended Complaint, this alleged assault took place at
work and during work hours.  <u>Id.</u> at ¶ 111.  Unlike the harassment in <u>Mahoney</u>, however, the
assault was not closely tied to any work-related activities, and unlike in <u>Ahmed</u>. it did not occur in
the commission of Ms. McElroy's job duties.  Further, such an assault could not reasonably be

---

[5]  The personal animus exception is only applicable to acts by third parties, including co-employees; it is not applicable to deliberate employer misconduct in which no third person or fellow employee was involved.  <u>See</u> <u>Hurst v. Beck</u>, 771 F. Supp. 118, 121 (E.D. Pa. 1991).  It might be argued that some of the alleged conduct is traceable directly to Ms. Jackson's employer, and not to a third party or co-worker, thereby placing the conduct outside of the personal animus exception.  However, the Court need not make this determination because the only allegations that cause this claim to fall within the personal animus exception involve the alleged assault by Ms. McElroy, who *is* a third party within the meaning of the exception.

"expected in the workplace."  Hettler 2000 U.S. Dist. LEXIS 14537, at *13.

The Court notes that the question of the alleged harasser's intent is inherently fact intensive, and if an intentional infliction of emotional distress claim is properly pleaded, the issue of intent should be reserved for the trier of fact.  Williams v. U.S. Airways, Inc., No. 06-4797, 2007 U.S. Dist. LEXIS 65799, at **6–7, n.2 (E.D. Pa. Sept. 5, 2007).  At this early stage in the life of this case, Ms. Jackson has alleged sufficient facts to show that her assault may have been motivated by Ms. McElroy's personal animus against Ms. Jackson, as caused by Ms. McElroy's perception that Ms. Jackson's somehow interfered with her ability to purchase a house.[6] Therefore, Ms. Jackson's claim is not barred by the Workers' Compensation Act.[7]

C.     Ms. Jackson Has Alleged "Extreme and Outrageous" Conduct

LVPG also argues that the conduct alleged is not, as a matter of law, sufficiently "extreme

---

[6]  On the other hand, the assault may not have been motivated by a *personal* animus, and instead motivated by a *generalized* animus based on Ms. Jackson's status as an African-American person.  Ms. McElroy's  "you people" reference could have referred to all African-American people, and not Ms. Jackson as an individual or as an out-of-towner, as quick-wittedly suggested by counsel during oral argument.  Oral Argument Tr. at 21–23.  See Abbott, 758 A.3d at 1224–25.  The Court recognizes that this issue likely will be explored during discovery, and possibly revisited on summary judgment.

[7]  In its Reply Brief and again at the oral argument, LVPG relied heavily on the Court's decision in Huggins, 2008 U.S. Dist. LEXIS 65604.  LVPG sought to liken the facts in this case to the facts in Huggins, and argued that the Court should follow Huggins to find that Ms. Jackson's claim of intentional infliction of emotional distress falls outside the personal animus exception.
The facts in Huggins are distinguishable from this case.  In Huggins, the plaintiff alleged only work-related conduct on the part of his supervisor – that the supervisor abused her position in the workplace and "manufactured harassment allegations against him, and used the machinery of the School District to investigate him, leading to his eventual termination."  2008 U.S. Dist. LEXIS 65604, at *45.  There were no allegations to suggest that the offending conduct was motivated by personal animus.  By contrast, here the allegations of Ms. Jackson's assault and the verbal exchange leading up to it are sufficient to place her claim within the personal animus exception of the Workers' Compensation Act.

and outrageous" to support an intentional infliction of emotional distress.  To state a claim for

intentional infliction of emotional distress, a plaintiff must show conduct that is "so outrageous,

and so extreme in degree, as to go beyond all possible bounds of decency, and be regarded as

atrocious, and utterly intolerable in a civilized community." Cox v. Keystone Carbon Co., 861

F.2d 390, 395 (3d. Cir. 1988).  "[I]t is extremely rare to find conduct in the employment context

that will rise to the level of outrageousness necessary to provide a basis for recovery for the tort of

intentional infliction of emotional distress." Id. (internal citations omitted).  "Courts in this

District have repeatedly found that racial discrimination alone does not meet the 'extreme and

outrageous conduct' standard necessary to state a claim for intentional infliction of emotional

distress." Hargraves v. City of Philadelphia, No. 05-4759, 2007 U.S. Dist. LEXIS 31951, *10

(E.D. Pa. Apr. 26, 2007) (citing multiple cases holding same and dismissing plaintiff's intentional

infliction of emotional distress claim because it was based only on race discrimination and

retaliation). See also Jakimowicz v. Philadelphia, No. 07-3327, 2008 U.S. Dist. LEXIS 10168 at

**7–8 (E.D. Pa. Feb. 12, 2008) (finding that racial harassment and retaliation allegations were not

sufficiently "extreme and outrageous" to support an intentional infliction of emotional distress

claim, when the alleged harassment consisted of poor performance reports, daily verbal

complaints, and memos alleging violations of policies); Fugarino, 123 F. Supp. 2d at 844–45

(finding that criticizing, publicly reprimanding and disparaging employee; searching employee's

desk at work; asking employee out on a date twice; and making an obscene phone call to

employee at work did not rise to the level of "outrageousness" to permit recovery for intentional

infliction of emotional distress); Snyder v. Specialty Glass Prods., Inc., 658 A.2d 366, 374–75

(Pa. Super. 1995) (finding that screaming, reprimanding, and demoting employee for being late

did not rise to the level of "outrageousness" to permit recovery for intentional infliction of

emotional distress).

Violence or physical harm, or threats of violence or physicial harm, on the other hand, may be sufficiently "extreme and outrageous" to support a claim for intentional infliction of emotional distress.  See Price, 790 F. Supp. at 100 (finding the following combined actions to be sufficiently "extreme and outrageous" to support an intentional infliction of emotional distress claim: a co-worker's threat that he would "bury his hammer" into plaintiff's head, another co-worker's comment that he could have plaintiff "wiped out," co-worker discussions of deer hunting and killing in plaintiff's presence knowing of plaintiff's aversion to the topic, and tying a deer's head to the roof of plaintiff's car).  See also Andrews v. Philadelphia, 895 F.2d 1469, 1487 (3d. Cir. 1990) (affirming trial court's grant of judgment notwithstanding the verdict on the ground that there was no proof that the defendants participated in the harassment, but noting that plaintiff's allegations may be sufficiently outrageous to form the basis of an intentional infliction of emotional distress claim, particularly the allegation that defendants covered plaintiff's shirt with a lime substance that burned plaintiff).

Each case must be analyzed on its own facts, and mere allegations of assault and battery may not be sufficient to show "extreme and outrageous" conduct.  See, e.g., Martinez v. Warner, No. 07-3213, 2008 U.S. Dist. LEXIS 44395, at *54 (E.D. Pa. June 5, 2008) (dismissing intentional infliction of emotional distress claim for lack of extreme or outrageous conduct allegations, where arresting officers relied on faulty warrant to arrest plaintiff, who was pregnant). At the same time, a plaintiff may allege "extreme and outrageous" conduct that does not involve violence, threats of violence, assault or battery, but is nevertheless sufficient to show extreme and outrageous conduct.  See, e.g., Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265 (3d Cir. 1979) (upholding intentional infliction of emotional distress claim where defendant's team

19

physician released to press information that plaintiff was suffering from a fatal disease, when physician knew the information was false); Banyas v. Lower Bucks Hosp., 437 A.2d 1236 (Pa. Super. 1981) (finding that trial court had erred in dismissing intentional infliction of emotional distress claim where defendants intentionally fabricated records to suggest that plaintiff had killed another person, which resulted in plaintiff being indicted for murder).

Ms. Jackson cites Hoy v. Angelone, 720 A.2d 745, 754 (Pa. 1998), for the propositions that "[r]etaliatory conduct is typically indicative of discrimination of a more severe nature and usually has a greater detrimental impact upon the victim," and "retaliation is a critical and prominent factor in assessing the outrageousness of an employer's conduct." Pl.'s Brief in Defense of Partial Mot. to Dismiss the Am. Compl. at 10. These propositions do not, however, suggest that *all* allegations of retaliation are sufficient to support a claim for intentional infliction of emotional distress. The majority of the discriminatory and/or retaliatory acts alleged in this case are unpleasant, and possibly illegal, but simply do not rise to the level of being "so outrageous, and so extreme in degree, as to go beyond all possible bounds of decency, and to [sic] be regarded as atrocious, and utterly intolerable in a civilized community." Cox, 861 F.2d at 395. But see Bowersox v. Glatfelter Co., 677 F. Supp. 307, 311–12 (M.D. Pa. 1988) (allegations were sufficiently "extreme and outrageous" to support an intentional infliction of emotional distress claim, where supervisor retaliated against employee for rejecting his sexual conduct by withholding information from employee that she needed to perform her job, forbidding her to talk to anyone in the office, prohibiting her from answering the phone, and following her around the workplace).

20

As with the personal animus exception, the linchpin for the "extreme and outrageous" element is the alleged assault of Ms. Jackson.  Depending on the attendant circumstances, this aggressive conduct may be sufficiently "extreme and outrageous" to support a claim for intentional infliction of emotional distress.  Admittedly, this may prove quite challenging for Ms. Jackson to prove at trial.  The alleged assault was a one-time event, and discovery may demonstrate that it was not as "outrageous" as the violence or threats of violence in Price or Andrews, the fabrication of homicide evidence and resulting indictment in Banyas, or the knowingly false statement to the press that a patient had a fatal disease, as in Chuy.  At this early stage in the litigation, however, the Court determines that Ms. Jackson has alleged sufficient facts regarding "extreme and outrageous" to survive LVPG's Partial Motion to Dismiss.

IV.     CONCLUSION

For the reasons set forth above, the Court grants LVPG's Partial Motion to Dismiss regarding Ms. Jackson's Pennsylvania Whistleblower Law claim and denies it as to Ms. Jackson's claim for intentional infliction of emotional distress.  An Order consistent with this Memorandum follows.

BY THE COURT:


S/Gene E.K. Pratter
GENE E.K. PRATTER
UNITED STATES DISTRICT JUDGE

**IN THE UNITED STATES DISTRICT COURT**

**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WALLICE F. JACKSON** | : | **CIVIL ACTION** |
| **Plaintiff,** | : | |
| | : | |
| **v.** | : | |
| | : | |
| **LEHIGH VALLEY PHYSICIANS** | : | |
| **GROUP** | : | |
| **Defendant.** | : | **NO. 08-3043** |

## ORDER

AND NOW, this 29th day of January, 2009, upon consideration of Defendant Lehigh Valley Physicians Group's Partial Motion to Dismiss the Amended Complaint (Docket No. 8), it is hereby ORDERED that Defendant's Partial Motion to Dismiss is GRANTED IN PART AND DENIED IN PART.  The Partial Motion to Dismiss is GRANTED as to Ms. Jackson's Pennsylvania Whistleblower Law claim, and DENIED as to Ms. Jackson's claim for intentional infliction of emotional distress.

BY THE COURT:


S/Gene E.K. Pratter
_____          GENE E. K. PRATTER
UNITED STATES DISTRICT JUDGE